SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
Jeffrey D. Lewin, SBN 68202
Cynthia A. Fissel, SBN 164153
550 West "C" Street, Suite 1500
San Diego, California 92101
Telephone: (619) 233-4100
Fax Number: (619) 231-4372

Attorneys for Defendants
Creative Urethane Concepts, Inc. and Clyde Cobb

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROLINE CONCRETE TOOLS, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>GORD DENNIS, an individual; CADILLAC CONCRETE PRODUCTS, LTD., an unknown business form located in British Columbia, Canada; CREATIVE URETHANE CONCEPTS, INC., a South Carolina Corporation; CLYDE COBB, an individual; UNIVERSAL BUILDING PRODUCTS, INC., an Illinois Corporation; LEGACY DECORATIVE CONCRETE SYSTEMS, INC., an Illinois Corporation; STEPHEN JOHNSON, an individual; CHARLES KREUTZER, an individual; SOLOMON COLORS, INC., an Illinois Corporation; RICHARD SOLOMON, an individual; GINA SOLOMON, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 3:07-cv-2310-LAB (AJB)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLYDE COBB'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**Fed. R. Civ. P. 12(b)(2)**<br><br>Judge: Hon. Larry Allan Burns<br>Ctrm: 9<br>Date: November 17, 2008<br>Time: 11:15 a.m. |

## I.
## INTRODUCTION

Clyde Cobb ("Mr. Cobb") is a resident of South Carolina. Mr. Cobb is also the President of Creative Urethane Products, Inc. ("CUC"). Unlike CUC, however, Mr. Cobb lacks sufficient minimum contacts with the State of California to be subject to the personal jurisdiction of this Court. Nevertheless, Proline Concrete Tools, Inc. ("Proline"), through its Second Amended Complaint ("SAC") has sued Mr. Cobb in his individual capacity. There mere fact that Mr. Cobb is the President of CUC, a corporation that does business in California, does not entitled Proline to sue Mr. Cobb in the United States District Court for the Southern District of California.

Proline's SAC does not allege that Mr. Cobb has had any individual contact with California. Proline does not allege any conduct by Mr. Cobb other than in his capacity as President of CUC. Proline will not be able to prove that any of Mr. Cobb's actions individually, or as President of CUC, are directed to California or connected with the infringement alleged in this action. As established below, Mr. Cobb lacks sufficient minimum contacts with California.

Accordingly, this action should be dismissed as to Mr. Cobb for lack of personal jurisdiction under Federal Rules of Civil Procedure 12(b)(2).

## II.
## STATEMENT OF FACTS

Proline makes the same jurisdictional allegation against all defendants, including Mr. Cobb, which reads in its entirety:

> 3. This Court has personal jurisdiction over all Defendants by virtue of their transacting, doing, and soliciting business in this District, and because a substantial part of the relevant events occurred in this District and because a substantial part of the property that is the subject of this action is situated here.

SAC ¶ 3. Proline further alleges that Mr. Cobb is an "officer" of CUC, that he "manages" CUC, "governs and controls" the infringing conduct of CUC, and is aware of Plaintiff's rights. SAC ¶ 6. Proline does not allege that Mr. Cobb had any contact whatsoever with California, either individually or in his capacity as an officer of CUC.

1   Mr. Cobb has been President of CUC since October, 2002. As President of CUC, his
2 executive duties have included overall management and daily operations of the company.
3 Declaration of Clyde Cobb ("Cobb Decl.") at ¶ 2.

4   Mr. Cobb is neither a resident nor a domiciliary of the State of California, and has never
5 resided nor been domiciled in the state of California. Cobb Decl. ¶ 5. Mr. Cobb was not served
6 within the State of California with the summons and April 30, 2008 amended complaint or the
7 August 28, 2008 SAC. Cobb Decl. ¶ 4. He has not yet appeared in the action.

8   Mr. Cobb does not currently own and has never owned real or personal property or any bank
9 accounts in the State of California. Cobb. Decl. ¶ 6. He has had no contact with the State of
10 California that relates to Proline. Cobb Decl. ¶ 7. Mr. Cobb has played no role in CUC's creation,
11 marketing, distribution or sale of concrete decorative stamps in the State of California. Cobb Decl. ¶
12 8.

13   Mr. Cobb's contacts with the State of California since 1991 are as follows:

14 - In 1992, on behalf of Specialty Concrete Products ("SCP"), a company with which
15   Mr. Cobb then was affiliated as owner and President, he had a meeting at Los
16   Angeles International Airport during a layover between one flight and another; that
17   meeting, however, did not relate either to Proline or to the subject matter of this case.

18 - Approximately four or five years ago, Mr. Cobb attended a meeting in San Diego,
19   California of the American Society of Concrete Contractors, a trade association with
20   which he was affiliated as a board member of the Decorative Concrete Council; but
21   that meeting did not relate either to Proline or to the creation, marketing, distribution
22   or sale of concrete decorative stamps.

23 - In the last year or two, in the capacity as President of SCP, Mr. Cobb caused to be
24   hired an individual, who lived in the State of California, to design a logo for SCP.

25 - Mr. Cobb has flown into and out of Los Angeles International Airport on
26   approximately ten occasions - each time on his way to or from a destination outside
27   the State of California.

28

Mr. Cobb has had no other contact since 1991 with the State of California and has never had substantial, continuous and systematic contacts with the State of California. Cobb Decl. ¶¶ 9-10.

### III.

### LEGAL STANDARD

Mr. Cobb moves to dismiss the SAC under Fed. R. Civ. P. 12(b)(2) on the ground that the Court lacks personal jurisdiction over him. "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Indus. A.B.*, 11 F.3d 1482, 1484 (9th Cir. 1993).

California's personal jurisdiction long-arm statute confers jurisdiction to the extent permitted by the due process clause of the United States Constitution. Cal. Code Civ. P. § 410.10. The exercise of personal jurisdiction over a nonresident defendant violates the protections of the due process clause if that defendant does not have "minimum contacts" with the forum State such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310 (1945). The personal jurisdiction requirement "represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Glencore Gain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1121 (9th Cir. 2002). Under the due process clause, courts may exercise either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984).

General personal jurisdiction is established where a defendant's activities in the forum state are "continuous and systematic," even if the cause of action is unrelated to those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477-78 (1985). Specific personal jurisdiction, on the other hand, is established if the defendant has "minimum contacts" with the forum state that, although not "continuous and systematic," are sufficiently related to or arising from the cause of action. *Acorn v. Household Intern., Inc.*, 211 F. Supp. 2d 1160, 1163 (N.D. Cal. 2002). "Whether dealing with specific or general jurisdiction, the touchstone remains 'purposeful availment.'" *Helicopteros, supra,* 466 U.S. at 414-15. By requiring that "contact proximately result from actions by the defendant himself that create a substantial connection with the forum State, the Constitution ensures

that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King, supra*, 471 U.S. at 475. Each defendant's contacts with the forum state must be assessed individually. *Calder v. Jones*, 465 U.S. 783 (1984).

## IV.

## MR. COBB SHOULD BE DISMISSED FROM PROLINE'S SECOND AMENDED COMPLAINT BECAUSE PROLINE WILL BE UNABLE TO ESTABLISH THIS COURT'S PERSONAL JURISDICTION OVER HIM

To survive a motion to dismiss, plaintiff must make a prima facie showing of jurisdictional facts to support the exercise of either general or specific personal jurisdiction. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Colt Studio, Inc. v. Badpuppy Enterprise*, 75 F. Supp. 2d 1104, 1107 (C.D. Cal. 1999). Proline cannot meet its burden under either standard.

### A. The Fiduciary Shield Doctrine Prevents this Court from Exercising Personal Jurisdiction Over Mr. Cobb.

The fiduciary shield doctrine prevents the exercise of personal jurisdiction over an individual whose activities were performed solely in a corporate or employment capacity. *See Mihlon v. Superior Court*, 169 Cal. App. 3d 703, 713 (1985).

> For jurisdictional purposes, the acts of corporate officers and directors in their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals. Implicit in this principle is the consideration that corporations are separate legal entities that cannot act on their own but must do so through their appointed representatives. Accordingly, acts performed by these individuals, in their official capacities, cannot reasonably be attributed to them as individual acts creating personal jurisdiction.

*Colt Studio, supra*, 75 F. Supp. 2d at 1111, citing *Shearer v. Superior Court*, 70 Cal. App. 3d 424, 430 (1977); *Mihlon v. Superior Court*, 169 Cal. App. 3d 703, 713 (1985).

The only specific allegation in the SAC against Mr. Cobb is that he is an officer of CUC, and in that capacity he manages, governs and controls CUC's conduct and was allegedly aware of certain unidentified "rights" of Plaintiff. SAC ¶ 6. The SAC does not allege that Mr. Cobb is the alter ego of CUC or that he is personally liable for any wrongdoing in the State of California.

Thus, Proline has not merely acknowledged that Mr. Cobb was acting as CUC's President at all times relevant to this action, it has affirmatively alleged that fact. Accordingly, personal jurisdiction cannot attach to Mr. Cobb under the fiduciary shield doctrine.

**B.  This Court Cannot Exercise General or Specific Personal Jurisdiction Over Mr. Cobb Because He Does Not Have "Minimum Contacts" with the State of California**

Proline's jurisdictional allegations relate solely to Mr. Cobb's action as President of CUC. Proline contends that "This court has personal jurisdiction over all the Defendants by virtue of their transacting, doing, and soliciting business in the District, and because a substantial part of the relevant events occurred in this district and because a substantial part of the property that is the subject of this action is situated here." SAC ¶ 3.

Plainly, this Court cannot exercise general personal jurisdiction over Mr. Cobb. Proline does not allege that Mr. Cobb's contacts in California are substantial, continuous and systematic enough to subject him to the general jurisdiction of this Court. Indeed, Mr. Cobb has never had substantial, continuous or systematic contacts with the State of California. Cobb Decl. ¶ 10.

At most, Proline contends that jurisdiction over Mr. Cobb arises from his alleged conduct relating to this action. SAC ¶ 6. The Ninth Circuit has established a three factor test to determine when a state may constitutionally exercise specific jurisdiction over a non-resident defendant: (1) the out of state defendant must have done some act or consummated some transaction with the forum state or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of its laws, (2) the claim must arise out of or result from the defendant's forum-related activity, and (3) the exercise of jurisdiction must be reasonable. *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977); *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 824 (N.D. Cal. 1992).

This facts of this case are similar to the facts in *Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743 (C.D. Cal. 1995). There, the Court held there was no basis to exercise specific personal jurisdiction over the non-resident President of a company alleged to have wrongfully used plaintiff's trademark in its advertisements. Although the President had overall

responsibility for his company's administrative functions, was responsible for advertising and authorized placement of advertisements, he did not personally develop the advertising campaign or choose the trademark used in the advertisement at issue in the litigation. Moreover, the President had only been to California a handful of times in the 15 years preceding the case. In dismissing the case against the corporate officer for lack of personal jurisdiction the Court noted: "Plaintiff has not alleged sufficient personal conduct by Mr. Berk specifically directed at California that would justify hailing him into this Court." *Id.* at 751.

Also instructive is *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F. Supp. 820 (N.D. Cal. 1992), wherein insurance agents sued the insurer and certain of its officers and directors for fraud. In *LeDuc*, the Court found insufficient contacts to establish specific personal jurisdiction over several non-resident individual defendants who had been present in California in the five years preceding the lawsuit only (i) to testify in unrelated matters; (ii) for trade association meetings; and (iii) sporadically for business trips unrelated to the issues in dispute. *Id.* at 825. The Court also dismissed the case against a Regional Director whose region included California due to the absence of evidence of purposeful action either in or directed to California related to plaintiff's claims. *Id.* Finally, the Court also dismissed an individual who had signed various agency agreements which authorized plaintiff to solicit business from California residents and who traveled to California twice a year to meet with agents. The Court reasoned:

> Such connections are insufficient to establish personal jurisdiction over this defendant in this action. This dispute centers upon the failure of Kentucky Central to disclose allegedly fraudulent practices to its agents. Defendant Sammartin could not reasonably have known that by signing such contracts he would be subject to jurisdiction in this state in this case. Although his signing of the documents may have indirectly assisted Kentucky Central in developing further business in California, the act of signing the agency's contract is neither sufficiently directed at this state, nor is it adequately connected with the issues of this litigation to warrant the exercise of jurisdiction in this action.

*Id.* at 825-26.

Mr. Cobb's contacts with California during the last 17 years are limited to (i) one meeting in the Los Angeles International Airport that did not relate to Proline or the subject matter of this case; (ii) attendance at one trade association meeting that did not relate to Proline or the subject matter of

this case; (iii) hiring one California resident to design a logo for another company; and (iv) approximately 10 layovers at the Los Angeles International Airport enroute to destinations outside California. Cobb Decl. ¶ 9.

Accordingly, under each and every prong of the *Data Disc* test, Mr. Cobb's contacts with California are wholly insufficient to establish a basis for specific jurisdiction. Mr. Cobb performed no act or transaction by which he purposely availed himself of the privilege of conducting activities in California thus invoking the benefits and protections of California law. Proline's claim does not result from any activity by Mr. Cobb in California. Simply stated, Proline has failed to allege sufficient personal conduct by Mr. Cobb specifically directed at California that would justify hailing him into this Court. It would be patently unreasonable to exercise personal jurisdiction over Mr. Cobb in this case.

## V.

## CONCLUSION

Proline has not established and cannot establish this Court's jurisdiction over Mr. Cobb. Proline has not alleged any conduct in California by Mr. Cobb outside the scope of his duties as President of CUC. Mr. Cobb's contacts with California are wholly insufficient to establish a basis for general or specific personal jurisdiction. Accordingly, this Court should dismiss the SAC as to Mr. Cobb for lack of personal jurisdiction.

Dated: September 11, 2008

SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation

By: /s/ Cynthia A. Fissel
Jeffrey D. Lewin
Cynthia A. Fissel
Attorneys for Defendants Creative Urethane Concepts, Inc. and Clyde Cobb